**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

_____
                                )
FREDERICK HARPER, individually  )
and on behalf of all present    )
and future inmates in the       )
Fulton County Jail in Atlanta,  )
Georgia,                        )
        Plaintiff,              )  CIVIL ACTION FILE
        v.                      )  NO. 1:04-CV-01416-MHS
                                )
DEPUTY TYRONE BENNETT,          )
individually; and FULTON COUNTY,)
GEORGIA; FULTON COUNTY BOARD OF )
COMMISSIONERS, KAREN HANDEL,    )
Chairperson, ROB PITTS, EMMA I. )  **DEFENDANT FULTON COUNTY'S**
DARNELL, WILLIAM EDWARDS, TOM   )  **RESPONSE TO THE COURT'S**
LOWE, NANCY BOXILL, members, in )  **MAY 24, 2007 ORDER**
their official capacities;      )
                                )
        Defendants,             )
                                )
MYRON FREEMAN, Fulton County    )
Sheriff, in his official        )
capacity,                       )
        Defendant and Third Party)
        Plaintiff,              )
                                )
        v.                      )
                                )
JIM DONALD, Commissioner        )
Georgia, Department of          )
Corrections in his official     )
capacity,                       )
and the GEORGIA DEPARTMENT OF   )
CORRECTIONS,                    )
        Third-party defendants. )
_____)

**DEFENDANT FULTON COUNTY'S RESPONSE
TO THE COURT'S MAY 24, 2007 ORDER**

COMES NOW, Fulton County, on behalf of itself and the

Fulton County Board of Commissioners collectively "Fulton County") and files this response to the Court's May 24, 2007 Order.

## BACKGROUND

On June 22, 2004, Plaintiff Frederick Harper, on behalf of a class of inmates at the Fulton County Jail, brought this action against Defendants and alleged violations of their constitutional rights under the Eighth and Fourteenth Amendment. Specifically, Plaintiffs alleged that they were subjected to unconstitutional living conditions due to an excessive number of inmates in the Jail, an inadequate number of detention officers to ensure their safety, and the breakdown of the ventilation, plumbing and laundry systems. The parties voluntarily agreed to allow a receiver to take charge of the Fulton County Jail, and on July 14, 2005, the Court appointed John Gibson as the jail receiver.  Mr. Gibson served as the receiver until January 1, 2005 when the newly elected Sheriff, Myron Freeman, assumed responsibility for the Jail. On February 6, 2006, this Court approved a consent order entered into by the parties to correct Plaintiffs' alleged violations.

Shortly thereafter, the Court appointed Patrick McManus as the Court Monitor (the "Monitor). Since the Monitor's

appointment, he has prepared four reports on conditions at the Fulton County Jail.  The Monitor's latest report found that the Jail was clean and that the inmate population was well below the limits established by the Consent Order. <u>See</u> *Fourth Quarterly Report of the Court Monitor*, pp. 4, 10. In addition, the Monitor found the medical and mental health care at the Jail to be "generally compliant" with the requirements of the Consent Order and that the recent renewal of the Jail's accreditation by the National Commissioner on Correctional Health Care (NCCHC) supported his conclusion on compliance. In fact, in the two major areas of the Consent Order where the Monitor found Defendants non-compliant - staffing and inmate releases - he recognized the parties' progress and good faith efforts.

With regard to the timely release of inmates, the Monitor stated that there was "significant progress" and that "Jail staff should be proud that their efforts have put the Jail in a position where with continued effort it can come into full compliance with the release portion of the order". <u>See</u> *Fourth Quarterly Report of the Court Monitor*, p. 12.  As to staffing, even though the Monitor found Defendants were in non-compliance, he pointed out that the Sheriff was addressing the staffing issue through recruitment and hiring efforts and more efficient

screening and processing of applicants. [1]

In response to the Monitor's report, the Court, in its May 24, 2007 Order wrote the following:

> The Court is *considering* several possible courses of action, including (1) requesting an investigation by the U.S. Attorney and/or the FBI of allegations regarding the reporting of use of force incidents at the jail and intimidation of or retaliation against jail staff, (2) issuing a citation for contempt due to defendants' continuing violation of the Consent Order, and (3) issuing an order to show cause why a receiver should not be appointed to assume responsibility for all jail operations. (emphasis added)

The Order stated that counsel should be prepared to discuss these possibilities at a conference with the Court in chambers on June 12, 2007.

Fulton County does not dispute the Court's authority to request an investigation by the U.S. Attorney or the FBI and has no objection to the Court's consideration of this possibility. However, Fulton County objects vigorously to any attempt to

---

[1]    The Monitor also mentioned that he had concerns with use of force reporting procedures and the inmate grievance review process.   However, these appear, at least to Fulton County, to be matters that can be easily and quickly resolved by the parties with no intervention from the Court. Further, the most recent Monitor's reports have concentrated on "management and organizational issues" despite the fact that these are not issues contained in the Consent Order. While Fulton County respects the Monitor's reports on management and organizational issues, it respectfully requests that the Monitor focus his efforts on the issues identified in the Consent Order.

appoint a receiver at the Jail and to any issuance of a citation for contempt.   Neither of these measures can be taken without the benefit of an order for an evidentiary hearing. To date, no such order has been issued.   Further, Plaintiffs have not requested that the Court resolve any issue through contempt procedures or through the appointment of a receiver. These issues are governed by paragraph 112 of the Consent Order. [2] Both of these "possible courses of actions" represent extraordinary remedies and stringent legal standards must be met before such remedies are enforced.

## ARGUMENT AND CITATION OF AUTHORITY

### I.   Plaintiffs Cannot Meet The Legal Standard For The Issuance Of A Contempt Citation.

This Court should not hold Defendants in contempt based on the Monitor's findings in his Fourth Quarterly Report.   It is axiomatic that "[c]ourts have the inherent power to enforce compliance with their lawful orders through civil contempt." Citronelle-Mobile Gathering, Inc. v. Watkins, 943 F.2d 1297, 1301 (11th Cir. 1991).   However, a finding of civil contempt, like any other equitable remedy, must be necessary and narrowly

---

[2]   Paragraph 112 of the Harper Consent Order provides that any party aggrieved by an alleged violation of the Consent Order may request a dispute resolution conference with all parties.   In the event the parties are unable to resolve a dispute, any party may seek a determination from the Court resolving the dispute.

tailored to achieve the desired relief. More importantly, this extraordinary relief must be imposed only after the potentially at risk party has been given due process.

The legal standard for proof of contemptuous conduct is high. To hold a defendant in civil contempt, a district court must determine, by clear and convincing evidence, "1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." McGregor v. Chierico, 206 F.3d 1378, 1383 (11th Cir. 2000); United States v. Koblitz, 803 F.2d 1523, 1527 (11th Cir. 1986); See also Doe v. Bush, 261 F.3d 1037, 1047 (11th Cir. 2001). "[A]ny ambiguities or uncertainties in such a court order [must be construed] in a light favorable to the person charged with contempt." Ga. Power Co. v. Nat'l Labor Relations Bd., 2007 U.S. App. LEXIS 8709 at *3 (11th Cir. 2007) (citing NBA Properties, Inc. v. Gold, 895 F.2d 30, 32 (1st Cir. 1990)). Still, the subjective beliefs or intent of the alleged contemnors in complying with the court's order is not the primary focus in a civil contempt proceeding. Howard Johnson Co. v. Khimani, 892 F.2d 1512, 1516 (11th Cir. 1990) (citation omitted). The central issue is whether in fact their conduct complied with the order. Id. However, it is well settled in

- 6 -

this circuit that "a person who attempts with reasonable diligence to comply with a court order should not be held in contempt." Newman v. Graddick, 740 F.2d 1513, 1525 (11th Cir. 1984) (citing Powell v. Ward, 643 F.2d 924, 931 (2nd Cir. 1981)).

Before making a finding of contempt, a court must conduct an analysis that comports with due process. A defendant must be given notice of the provisions of the order alleged to have been violated and an opportunity to be heard. See Reynolds v. McInnes, 338 F.3d 1201, 1208 (11th Cir. 2003); Serra Chevrolet, Inc. v. General Motors Corp., 446 F.3d 1137, 1147 (11th Cir. 2006); Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827 (1994). It is well settled that "[w]hen the purportedly contumacious conduct occurs outside the presence of the court, due process requires with very few exceptions, that the defendant (1) be informed, through a show-cause order of his purportedly contumacious conduct, and (2) be given a hearing at which he can be represented by counsel, call witnesses, and testify in order to show cause why he should not be held in contempt." Mercer v. Mitchell, 908 F.2d 763, 766-767 (11th Cir. 1990). To prevent an alleged contemnor from presenting evidence in his defense is reversible error. The Eleventh Circuit vacated the district court's ruling finding that "a defendant

should *always* be given an opportunity to show that changed circumstances would make holding him in contempt unjust." <u>Id</u>. at 769 (emphasis included).

In a contempt hearing, the district court must perform a step by step analysis. <u>Chairs v. Burgess</u>, 143 F.3d 1432 (11th Cir. 1998). The legal standard for the burden of proof and production in a contempt/show-cause hearing is well established. The Eleventh Circuit has held that the district court must first determine "(1) whether the moving party has established by clear and convincing evidence that the alleged offending party has violated an order of the court; (2) then the alleged offender has the burden of showing either (a) that the order was not violated, or (b) that he was excused from complying with the order; and (3) once the alleged offender has established some sort of excuse from complying with the order, the burden shifts to the moving party to show that the alleged offender could have complied with the order." <u>Marshall v. Americus-Sumter County Hospital Authority</u>, 1:01-CV-79-3, 2002 U.S. Dist. LEXIS 26821 *11 (2002)(citing <u>Chairs</u>, 143 F.3d at 1436).

In this case, the Court cannot find Defendants in contempt of the Consent Order based on the Court Monitor's Fourth Quarterly Report because the Court has not conducted a civil

- 8 -

contempt hearing.   The subjective findings of the Monitor cannot substitute for findings of fact.   And the Court has not issued a show-cause order identifying the alleged contemptuous conduct. More importantly, Defendants have had no opportunity to present evidence of their compliance.

Even if the Court finds that Defendants have not complied with the Consent Order, its finding would not end its inquiry. To avoid a finding of contempt, a defendant may show either that he did not violate the court order or that he is excused from complying. Id. at 768.   If an alleged contemnor is able to demonstrate that he failed to comply, or fully comply, with a court's order because of an inability to comply, then he may be excused.   Chairs, 143 F.3d at 1436.   The alleged contemnor is not required to show that compliance with the order at issue is completely impossible.   Id. at 1437.   Although he may not rely upon the mere assertion of inability, he may be excused if he can provide proof that he has made "in good faith all reasonable efforts to comply." Id.

Based on circuit precedent, Defendants in the instant case are able to demonstrate that any alleged non-compliance with the Consent Order is excusable because they have made a reasonable effort to comply.   In Chairs, supra, inmates in a county jail

- 9 -

sued the Alabama Department of Corrections and its officials alleging that their rights were violated under the Eighth and Fourteenth Amendments.  As a result of the suit, the district court entered a consent decree requiring all state prisoners be removed from the county jail within thirty days of the receipt by the state of the conviction and sentence. Id.  Subsequently, the county sheriff moved the court to enforce the decree because thirty-two prisoners who, under the terms of the decree, should have been moved to state prison had been held in county jail longer than the agreed time.

During the contempt hearing, the state attempted to introduce evidence showing that for it to comply with the decree it would be forced to violate the orders of other courts, but the district court precluded this evidence based on its observation that the state had actually transferred the inmates at issue prior to the show cause hearing. Id.  The Eleventh Circuit vacated the district court's ruling, holding that it was error not to allow the state to present for consideration such evidence of inability and that the district court incorrectly equated "inability" with "impossibility." Id. at 1438.  Here, the case against a finding of contempt is demonstrably stronger than was the case in Chairs.  Unlike Chairs, where the defendant

did not get the jail inmate population under the court-ordered cap, Defendants have taken extensive and costly measures to reduce and maintain the number of inmates held at the Fulton County Jail below the cap established by the Consent Order.

Even assuming the Court accepts the unsupported assertions of the Monitor as fact, Defendant Freeman, in his Response to the Monitor's Fourth Quarterly Report, shows that he has been reasonably diligent in his efforts to comply with the Consent Order. There are only three general provisions of the Consent Order where the Monitor identified "non-compliance": (1) jail staffing requirements; (2) 24-hour release requirements and reporting requirements; and (3) the requirement that grievance procedure be conducted in accordance with Jail Bureau Policies.[3] Regarding the first alleged area of non-compliance, Defendant Sheriff Freeman's Response presents, in great detail, his extensive efforts, in conjunction with Defendant Fulton County, to meet the staffing requirements. Also, Sheriff Freeman clearly articulates the specific challenges of hiring, training,

---

[3]    In his Fourth Quarterly Report, the Monitor also stated that the Sheriff is not in compliance with the Consent Order because the absence of reviews by the Jail's Use of Force Review Board indicated that the Sheriff's Office's use of force policy was not being followed. However, as was stated by Sheriff Freeman in his Response to the Monitor's report, there is no provision in the Consent Order that addresses or applies to use of force reports.

and deploying detention officers in light of time, experience, and salary considerations.

Second, with regard to the timely release and reporting requirements, the Monitor holds Sheriff Freeman responsible for difficulties in the communication and verification of disposition and sentencing information inherent to a large criminal justice system. While acknowledging the Jail's vastly improved performance in this area, the Monitor laments the fact that a small percentage of inmates were still over-detained. However, it is obvious from his Fourth Quarterly Report that in the majority of instances where an over-detention under the Consent Order has occurred, the reason was a delay in the transfer of release paperwork from the court system to the Jail. Fulton County currently is mobilized to streamline this process involving separate moving parts.

Indeed, the Monitor's report acknowledges that the Honorable Doris Downs, Chief Judge of the Fulton County Superior Court, "has pledged her continued cooperation in addressing this issue." See *Fourth Quarterly Report of the Court Monitor*, p. 12. Thus, the Monitor's report contains compelling evidence of Defendants' reasonable and diligent efforts to comply with the 24-hour release requirement. Once Defendants have shown that

they are unable to fully effectuate this provision of the consent decree, then their non-compliance should be excused. Moreover, as Sheriff Freeman explains in his response to the Monitor, uncertainty still exists as to what reporting requirements the Consent Order actually imposes.  Third, with regard to Jail grievance procedures, Defendants already have presented evidence to demonstrate that they are in compliance with the Order.

Finally, in considering whether a finding of contempt and sanction are appropriate in this case, the district court should consider Defendants' interest in managing their own affairs, consistent with the Constitution.  <u>Spallone v. United States</u>, 493 U.S. 265, 276 (1990).  In the case at bar, given Defendants' demonstrated effort to comply with the Consent Order, no sanction is warranted.

**II.  Plaintiffs Cannot Meet The Legal Standard For The Appointment Of A Federal Receiver To Assume Responsibility For All Jail Operations.**

This Court should not consider the appointment of a receiver to assume responsibility for any jail operation.  The appointment of a receiver to act in the place of "elected and appointed officials is an extraordinary step *warranted only by the most compelling circumstances*."  <u>District of Columbia v.</u>

- 13 -

Jerry M., 738 A.2d 1206, 1213 (D.C. Cir. 1999) (reversing appointment of receiver based on trial court's consideration of only the single factor of defendant's historical failure to comply with court mandates) (emphasis added) (citing Morgan v. McDonough, 540 F.2d 527, 535 (1st Cir. 1976)); Aviation Supply Corp. v R.S.B.I. Aerospace, Inc., 999 F.2d 314, 317 (8th Cir. 1993) ("Receiver is extraordinary equitable remedy that is only justified in extreme situations"); Connolly v. Gishwiller, 162 F.2d 428 (7th Cir. 1947) (The power to appoint receiver is drastic, harsh and dangerous one and should be exercised with care and caution for purpose of promoting ends of justice); Plata v. Schwarzenegger, No. C01-1351 THE, 2005 U.S. Dist. Lexis 43796, at *3-4 (N.D. Ca. Oct. 3, 2005) ("Court imposes the drastic but necessary remedy of a receivership...to bring the delivery of healthcare in California prisons up to constitutional standards"). Essentially the appointment of a receiver is the remedy of last resort, and therefore, should be undertaken only when absolutely necessary. Further, it is important that courts "not use the extraordinary remedy of appointment of receiver merely to allay...fears in case where facts are sharply disputed." Margolis v Franks, 138 F. Supp. 9, 10-11 (S.D.N.Y. 1956). Because Fulton County currently operates

- 14 -

a jail that is fully compliant with the United States Constitution, this Court's order of a federal receivership would be unwarranted.

The Court must consider a lengthy multi-pronged test in deciding to appoint a receiver. The test includes the following elements, the first two of which are given predominant weight: (1) Whether there is a grave and immediate threat or actuality of harm to plaintiffs; (2) Whether the use of less extreme measures of remediation have been exhausted or proven futile; (3) Whether continued insistence that compliance with the Court's orders would lead only to confrontation and delay; (4) Whether there is a lack of leadership to turn the tide within a reasonable period of time; (5) Whether there is bad faith; (6) Whether resources are being wasted; and (7) Whether a receiver is likely to provide a relatively quick and efficient remedy. Plata, 2005 U.S. Dist. Lexis 43796, at *66-67 (citing Dixon v. Barry, 967 F. Supp. 535, 550 (D. DC. 1997); District of Columbia, 738 A.2d at 1206; 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2983 (2005) (factors relevant to establishing requisite need for receivership include "imminent danger," inadequacy of available legal remedies, probability of harm to plaintiff, and possibility of irreparable

- 15 -

injury)).

Further, the Court should reach its determination regarding receivership after a properly noticed hearing that provides parties with an opportunity to present evidence. See e.g. Plata, 2005 U.S. Dist. Lexis 43796, at *2-3; Dixon, 967 F. Supp. at 537. The establishment of a receivership is undoubtedly an intrusive remedy.[4]  The Eleventh Circuit has advised that "a federal court, when fashioning a remedy to redress constitutional violations in prison, must recognize that it is ill-equipped to involve itself intimately in the administration of the prison system. Newman v. State of Ala., 683 F.2d 1312,

---

[4]   Note that while the Prison Litigation Reform Act (PLRA), 18 U.S.C. §3626(a)(1)(A) codifies the Court's authority to issue prospective relief that fully remedies constitutional violations, it specifically mandates that the relief not be overly broad. The relevant language of the PLRA is as follows:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. **The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.** The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. §3626(a)(1)(A) (emphasis added).

- 16 -

1320 (11th Cir. 1982).

In the present case, Fulton County vigorously maintains that its Jail is constitutionally adequate, and that it is working hard to achieve full compliance with the Consent Order in a timely fashion.  When the multi-pronged test for appointing a federal receiver is applied to the Fulton County Jail, the legal standard for receivership is not met.

With regard to the first element of the test, Fulton County maintains that the Jail is constitutionally adequate, and that there is no grave and immediate threat or actuality of harm to Plaintiffs.  But cf., Plata, 2005 U.S. Dist. Lexis 43796, at *1-4 ("The harm...done...to California's prison inmate population could not be more grave, and the threat of future injury and death is virtually guaranteed in the absence of drastic action").  In Plata, the court only appointed a federal receiver for California's prisons after it found that on average, an inmate in one of California's prisons needlessly died every six or seven days due to constitutional deficiencies in prison medical delivery system.  Id. at *3.  In contrast, the Fulton County Jail recently received an accreditation renewal by the National Commissioner on Correctional Health Care (NCCHC), and the medical and mental health care at the Jail has been recently

- 17 -

found to be "generally compliant" with the requirements of the Harper Consent Order. See *Fourth Quarterly Report of the Court Monitor*, p. 13.

Further, the Fulton County Jail is sanitary and the inmate population is currently well below the limits established by the Consent Order. *Fourth Quarterly Report of the Court Monitor*, pp. 4, 10. <u>Contra</u> <u>Newman v. State of Ala.</u>, 466 F. Supp. 628, 630-635 (M.D. Ala. 1979) (appointing federal receiver upon finding that cumulative effects of inmate overcrowding, filthy prisons, and inadequate medical treatment put inmates in grave danger in violation of the Eighth Amendment).

With regard to the second and third elements of the test, the use of less extreme measures has not been exhausted or proven futile, nor will Fulton County's compliance with the Consent Order lead to confrontation or delay. This Court has yet to issue any sanctions or contempt violations against Defendants for alleged violations of the Consent Order. <u>Contra</u> <u>Newman</u>, 466 F. Supp. at 635 ("Further injunctions or contempt proceedings will not accomplish the task of compliance, such remedies promise only confrontation and delay"); <u>Plata</u>, 2005 U.S. Dist. Lexis 43796, at *74-75 (despite court's innumerable suggestions and show cause orders, defendants failed to bring

- 18 -

prisons up to constitutional standards).

As to the fourth element of the test, leadership for the Jail is being sought. In May 2007, the position of Chief Jailor was posted nationally and applicants for the position are currently being sought. Further, an analysis of the fifth element indicates that Fulton County has not violated the terms of the Order in bad faith. In fact, in the two major areas of the Consent Order where the Monitor found Defendants non-compliant – staffing and inmate releases - he also recognized and acknowledged the parties' progress and good faith efforts. See *Fourth Quarterly Report of the Court Monitor*, pp. 8-9, 11-12.

With regard to the sixth and seventh elements of the test, Fulton County contends that its resources are far from being wasted. Further, it is unclear that a receiver would likely provide a quicker and more efficient remedy than Defendants. For instance, in less than eighteen months since the Consent Order was approved by this Court, Defendants have managed to clean up the jail, reduce inmate population, and address its assorted staffing issues. Contra Plata, 2005 U.S. Dist. Lexis 43796, at *88-90 ("all the evidence supports the Court's firm conviction that defendants have engaged in a huge waste of the

taxpayer's resources" and that "steady progress here under the direction of a Receiver is … far preferable to the current state of [defendants'] paralysis"). All of these factors, taken together, preclude the appointment of a federal receiver to assume responsibility of the Jail.

The District of Columbia Court of Appeals' analysis in _District of Columbia v. Jerry M._, 738 A.2d 1206 (D.C. 1999), is instructive. In that case, plaintiff juveniles confined in the defendants' detention centers filed suit against defendant district essentially alleging that the defendants had failed to provide appropriate care for juveniles in violation of the Constitution. _Id._ at 1208. The parties entered into a consent Order, which was approved by the court. Approximately ten years later, in response to the court-appointed special masters' various concerns, and finding that there were violations of several portions of the consent decree,  the Court appointed a receiver to assume responsibility of the defendants' juvenile detention centers. _Id._ at 1211-1212. On appeal, the appellate court reversed, holding the lower court had abused its discretion in appointing a receiver based solely on its consideration of defendants' failure to comply with the consent decree. _Id._ at 1212-1213.

In its analysis, the appellate court maintained that the trial court should have considered, in addition to the past performance of the defendants under prior circumstances, the availability of new leadership, the capability of new leadership to "turn the tide," the presence of good faith or bad faith at the time, and the prospects for the receiver of providing a speedy remedy to determine whether receivership was "the only viable option to effectuate compliance with the laws and orders of the court." Id. at 1214 (citing Morgan, 540 F.2d at 533; Dixon, 967 F. Supp. at 550).  The appellate court observed:

> In this case, the trial court relied principally upon only one of the factors essential for a reasonable exercise of its discretion to impose this extraordinary remedy. It focused upon the history of the District's failure to comply fully with the court's requirements. The District's abysmal response to its mandates for such a protracted period of time, as the trial court found, is a compelling consideration; however, it is not the only one. If that were the only factor for consideration, it would present a compelling case. However, some assessment must be given to the other pertinent factors by which the trial court's exercise of discretion must be guided.

Id. at 1213.  The court appropriately reversed the trial court after finding that the defendants had embarked on a new plan to come into compliance with the consent decree shortly before the receivership order was entered.

Similar to District of Columbia, the Fulton County Jail

does not require a federal receiver to assume its responsibilities.  The Consent Order was approved by this Court in February 2006, and during the preceding twelve to fifteen months, Defendants have made immense progress towards total and sustainable compliance with the Consent Order.  While full compliance will certainly take time, Fulton County has implemented changes at the Jail which resulted in an adequate jail facility that meets and exceeds the requirements of the Constitution.  Inmate population has been reduced, the Jail is hygienic, and inmates are receiving quality health services that exceed constitutional standards.

The Court should exercise restraint and give due deference to Fulton County's elected officials' ability to observe and obey the duties and obligations placed on them by federal and state law.  Only when such exercise of deference is unavailing, that the very intrusive course of action of appointing a federal receiver can even be contemplated.  See e.g. Shaw v. Allen, 771 F. Supp. 760, 761-762 (S.D. W. Va. 1990) (Federal receivership was warranted where defendant administrator of county jail repeatedly failed to provide constitutionally adequate jail facilities despite three prior contempt proceedings against the defendants for noncompliance with court order).

- 22 -

## CONCLUSION

Caselaw dictates that the measures the Court is considering are not applicable to the circumstances that presently exist in this case.  Defendants maintain a constitutionally adequate jail that provides inmates with basic life necessities and quality physical and mental health care.  Fulton County has and will continue to go beyond the United States Constitution's requirements and identify and correct any deficiencies which may exist at the Jail.


This 11th day of June, 2007.

                                    Respectfully Submitted,

                                    Overtis Hicks Brantley
                                    Fulton County Attorney
                                    Georgia Bar No.  351350

                                    **/s/Rolesia Butler Dancy**
                                    Rolesia Butler Dancy
                                    Georgia Bar No.  099928
                                    Coy J. Johnson, Jr.
                                    Georgia Bar No. 393001

**OFFICE OF THE FULTON COUNTY ATTORNEY**
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (office)
(404) 730-6540 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of June, 2007, I electronically filed the foregoing **"DEFENDANT FULTON COUNTY'S RESPONSE TO THE COURT'S MAY 24, 2007 ORDER"** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

Stephen B. Bright, Esq.          W. Randall Turner, Esq.

***/s/ Rolesia Butler Dancy***
Rolesia Butler Dancy
Georgia Bar No.09928

**OFFICE OF THE COUNTY ATTORNEY**
141 Pryor Street, S.W., Suite 4038
Atlanta, Georgia 30303
(404) 612-0246 (Office)
(404) 730-6324 (Facsimile)